LEVI DOW *vs.* INHABITANTS OF THE FIRST PARISH IN SUDBURY.

Where a person withdraws from a parish, in the manner provided by the Rev. Sts. *c.* 20, § 4, after the parish has granted a sum of money to defray its expenses, and before the expiration of the parochial year for which the money is granted, and a tax to raise the sum granted is not assessed until after the expiration of such year, and after a new valuation of estates is taken, and is then assessed on that valuation, such person cannot be legally included in such assessment.

Where a parish tax is illegally assessed upon a party and is collected by distress and sale of his property, he may maintain an action for money had and received, against the parish, for the amount of the tax, but not for the costs of the distress.

ASSUMPSIT for money had and received. The action was brought to recover the amount of a tax assessed upon the plaintiff, and collected of him by the defendants, and also to recover the amount of the costs of collection paid by the plaintiff. The agreed facts of the case were these : Prior to the 11th of April

1840, the plaintiff was a member of the first parish in Sudbury, and on that day he filed with the clerk of the parish a written notice, declaring the dissolution of his membership.

On the 18th of March 1839, the parish voted to grant $ 500 to defray parish expenses for the year then ensuing, and that sum was duly assessed in that year. On the 18th of September 1839, the parish voted to grant $ 275 for the support of preaching till the next annual meeting. At the next annual meeting, March 30th 1840, assessors for the year then ensuing were duly chosen and qualified. On the 2d of May 1840, these assessors, finding that the aforesaid grant of $ 275 had not been assessed, gave due notice to the inhabitants of the parish to bring in lists of the polls and estates on which said grant should be assessed ; but no list was brought in. In June 1840, said assessors made an assessment of said sum upon the inhabitants of the parish, including the plaintiff, and committed the tax list, with their warrant, to the parish collector, who duly seized and sold the plaintiff's property for payment of said tax and charges, and paid the same into the parish treasury.

*E. R. Hoar,* for the plaintiff.

*J. Keyes,* for the defendants.

DEWEY, J. By the provisions of Rev. Sts. *c.* 20, § 18, parish taxes " shall be assessed on the polls and estates of all the members of the parish, in the same manner and proportion as town taxes are by law assessed." If this rule were to be taken without reference to another provision, found in § 4 of the same chapter, respecting the effect of filing a certificate of withdrawal from a parish, it would seem quite clear that all parish taxes are to be assessed with reference to membership, property, &c., as they existed on the first day of May, in each year ; and that in making the list of persons liable to assessment, it should be restricted to those who were members of the parish at that period, in accordance with the corresponding provisions in relation to town taxes, as found in Rev. Sts. *c.* 7, §§ 6, 7, 9.

Great practical convenience results from adopting some definite period in each year for the valuation of estates and enumer-

ation of polls, in reference to the assessment of taxes ; and although an assessment made upon this basis may not always operate with perfect equality upon those who are not permanent inhabitants, yet the system, as a whole, does substantial justice ; and the rule being familiarly known, individuals may regulate their change of residence in reference to it.

In the assessment of town taxes, this simple and explicit rule of inhabitancy on the first day of May is the only test of liability to taxation for polls and personal estate ; and real estate is also taxed in reference to the ownership or occupancy on the same day. But in regard to parishes, in order to secure the most perfect freedom in the enjoyment of the rights of conscience, and in the selection of religious associations, every individual has the right to sever his connexion with a parish, at his pleasure. With this privilege, however, the member, thus severing his connexion, is subject to the liabilities provided in Rev. Sts. c. 20, § 4, wherein it is enacted that " all persons, belonging to any religious society, shall be taken and held to be members, until they shall file, with the clerk of such society, a written notice declaring the dissolution of their membership, and thenceforth shall not be liable for any grant or contract which may be thereafter made or entered into by such society." In the present case, the question turns upon the construction to be given to the latter clause of this section.

The plaintiff, before the making either of the valuation or the assessment of the tax, had dissolved his connexion with the first parish in Sudbury ; and if the right of taxation by the parish was limited to the period of actual membership, the tax upon the plaintiff was illegally assessed. But the defendants contend that the dissolution of membership, resulting from the filing of a certificate to that effect with the clerk of the parish, did not release the plaintiff from liability to taxation, where such taxation was founded upon a grant of money or contract which had been made before such certificate was filed ; and for this position they rely upon the statute already cited.

It is only by implication, that a liability is created by this section of the statute ; the argument being, that inasmuch as it is

provided that all liability, as to future grants and contracts, shall cease upon filing such certificate, it may be supposed thereby to affirm, indirectly at least, that as to grants and contracts already made, the liability still continues. Assuming such to be the proper inference to be drawn from the language of the statute, still it will be found extremely difficult to give to this provision the force and effect that are contended for, and not thereby extend this liability beyond what may reasonably be supposed to have been contemplated by the legislature. Are those, who are once members of a religious society, liable thereafter always to be taxed for the payment of the salary stipulated to be paid to a clergyman who may happen to have been settled over the parish while they were members ? A stipulation that such salary shall be paid for a term of years, or during the ministry of the pastor, would be a valid contract, as between him and the parish ; and as it respects all who were members at the time of making such contract, it would be a contract entered into by the parish before their withdrawal from the parish.

An attempt was made to enforce a similar principle, in the case of *Whittemore* v. *Smith*, 17 Mass. 347, where a territorial parish had borrowed money to build a meeting house ; it being during the period while the plaintiff in that action was an inhabitant of the parish and liable to taxation. Subsequently, and after the plaintiff had removed from the parish, the parish voted to raise money to discharge this debt, and assessed the same. The court held that the plaintiff was not liable to assessment, under the vote to raise this money, after his removal from the bounds of the parish. It was however suggested in the opinion of the court, that if the money had been granted before the filing of the certificate, the case might have been different. But that case occurred before the statute provision now relied upon existed.

The case of *Inglee* v. *Bosworth*, 5 Pick. 501, presented the question of the construction of *St.* 1823, *c.* 106, § 2, which was in these words : " Any person may separate from one religious society and join another, by filing with the clerk of the society left a certificate of the fact under the hand of the clerk

of the society which such person elects to join ; but such person shall remain liable to pay all such taxes as may have been ac tually granted or assessed against him previous to such sep-aration." Upon this statute, which is more direct and explicit in its terms, the court held that money voted to be raised to defray the parish expenses, though granted before the filing of the certificate, it not being actually appropriated or assessed until after it was filed, was not properly assessed upon the with-drawing members.

The general principle, that a withdrawing member of a parish remains liable upon a grant or contract already made by such society, must, we think, be taken and understood with some limitations ; and one of these limitations seems to be, that the liability of such persons to taxation, by reason of such previous grant or contract, is restricted to assessments made during the parochial year in which the money is granted, and within which it is, according to the usual practice, assessed. We think the rule applicable to this subject to be, that if a parish omit to assess a tax during the entire parochial year in which the money was granted, and until after a new valuation has been taken as the basis for taxation for the year subsequent, and then assess the same upon such new valuation, they cannot properly include in such assessment of taxes an individual who had ceased to be a member of the parish before the commencement of the parochial year in which said valuation and assessment are made.

The plaintiff being thus illegally assessed, he may maintain his action to recover back the amount of the tax collected of him and received by the defendants. *Inglee v. Bosworth,* 5 Pick. 501. *Baker v. Allen,* 21 Pick. 383. *Boston & Sandwich Glass Co. v. City of Boston,* 4 Met. 181.

In this form of action, the amount to be recovered must be limited to the amount of the tax paid, and the plaintiff will not be entitled to recover any costs he may have paid upon the levy of the warrant of distress.